**People of the State of Illinois, Plaintiff-Appellee, v. Donald Eugene Gray, Defendant-Appellant.**

Gen. No. 68–37.

Third District.
November 25, 1968.

Samuel J. Naylor and Richard Ripple, of Carthage, for appellant.

Max Stewart, State's Attorney of Hancock County, of Carthage, for appellee.

ALLOY, P. J.

This is an appeal from a verdict and ensuing judgment finding defendant guilty of selling alcoholic liquor without having a valid liquor license issued by Hancock County, Illinois. The court imposed a fine of $300 from which the appeal is taken.

The evidence discloses that defendant, Donald Eugene Gray, owned a 60-foot boat named "Addie May." It was a two-deck boat with a dining room and bar on one of the decks. Defendant had a liquor license issued by the State of Illinois Liquor Control Commission as a "Boat License." The license was issued pursuant to chapter 43, section 115 of 1965 Illinois Revised Statutes. The section provides in part as follows:

> "Licenses issued by the Illinois Liquor Control Commission shall be in the following classes: (a) Manufacturer's license—Class 1. Distiller, Class 2. Rectifier, Class 3. Brewer, Class 4. Wine manufacturer,

Class 5. First-class wine-maker, Class 6. Second-class wine-maker; (b) Distributor's license, (c) Importing Distributor's license, (d) Retailer's license, (e) Railroad license, (f) Boat license, (g) Non-Beverage User's license, (h) Wine-maker's retail license, (i) Airplane license, (j) Foreign importer's license. . . . (f) A boat license shall allow the sale of alcoholic liquor in individual drinks, on any passenger boat regularly operated as a common carrier on navigable waters in this State, which boat maintains a public dining room or restaurant thereon."

The defendant had no other license other than the State boat license referred to. No local license of any kind had been obtained.

During 1965, the boat (Addie May) was used on the Mississippi River as an excursion boat open to the public for rides lasting about an hour. On the evening of July 31, 1965, the Addie May made one excursion run on the Mississippi River early in the evening. The boat then returned to a boat dock on the Illinois side of the river, which dock was not within any city limits but was between Hamilton and Nauvoo, Illinois, in Montebello Township, Hancock County, Illinois. A wooden catwalk from the shore in Montebello Township to a dock in the river about 80 feet in length and 12 feet in width was used to approach the boat. This dock was parallel with the shore and was supported by wooden posts which were driven into the Mississippi River. The boat was tied to the dock on the evening of July 31, 1965. That evening, at about 7:45 p. m., two State Policemen dressed as civilians, boarded the Addie May. They both testified they had no trouble getting on board and while on board they each purchased two bottles of beer at the bar on one of the decks. During the period of nearly an hour when they were on board and purchased the beer, the Addie May remained tied to the dock and the engines were never turned on. After the officers had purchased

219

and consumed the beer they arrested defendant. He was thereafter charged in a criminal complaint with selling alcoholic liquor in Montebello Township without a Class "A" liquor license issued by Hancock County, Illinois. The complaint charged a violation of 1965 Illinois Revised Statutes, chapter 43, section 183. This section provides that "Any person who . . . sells alcoholic liquor at any place within the State without having first obtained a valid license so to do under the provisions of this Act . . . shall . . . be fined not less than $50 nor more than $500 . . . ."

The evidence at the trial of the cause disclosed that defendant had a valid "boat license" which was issued by the Illinois Liquor Control Commission for the period from February 17, 1965, to February 28, 1966, for the "Addie May" excursion boat. It was also shown that there was a public dining room on the Addie May and that the boat was in fact used as an excursion boat on the Mississippi River during 1965. In the course of the trial, the court instructed the jury that it was unlawful to sell alcoholic liquor at retail in Hancock County, Illinois, outside of any city or village limits without first obtaining a "Class A" County liquor license. The court refused to give defendant's tendered instruction which stated that if defendant in the case at the time in question had received from the Illinois Liquor Control Commission a "boat license," that defendant was not required by law to have any other license to sell liquor on said boat.

The fundamental question before us is whether it was the intent of the Illinois Acts relating to licensing and control of the sale of liquor, that a person who obtains a "boat license" from the State is also required to obtain a local license in the area where the boat ties up to the dock. Section 109 of chapter 43 of 1965 Illinois Revised Statutes clearly indicates that the Legislature intended that a boat license shall issue without a local license. It specifically provides:

220

"Nothing contained in this Act shall, however, be construed to permit the State Commission to issue any license, other than . . . railroad's, airplane's or boat's license . . . unless the person applying for such license shall have obtained a local license for the same premises. . . ."

This statute clearly indicates that a local license must be obtained before a State license can be obtained, *except* that the State may issue such licenses as "distributor's, railroad's, airplane's or boat's license," without the necessity of the applicant having a local license. The language of the statute permits of no other interpretation than to conclude that a person with a boat license need not also obtain a local license.

Under section 115 of the same chapter it is clear that a boat license without requirement of an additional local license is contemplated where it is provided that:

"Licenses issued by the Illinois Liquor Control Commission shall be of the following classes: . . . Class 6 . . . (e) Railroad license, (f) Boat license . . . (i) Airplane license . . . (f) A boat license shall allow the sale of alcoholic liquor in individual drinks, on any passenger boat regularly operated as a common carrier on navigable waters in this State, which boat maintains a public dining room or restaurant thereon."

It is clear that there is no requirement where a boat license is issued that there should also be a local license. In section 117 of this same chapter, the legislative intent to require only one license on a boat is further shown in the provision which recites that licenses shall state thereon the class to which they belong, the names of the licensees and addresses and description of the premises for which they are granted, "or in the case of railroads, airplanes and boats, a designation thereof by number or

name." It is obvious that if a local license were intended for boats, some local address or description of the location would be necessary for the purpose of ascertaining if the local license had been obtained. No provision appears anywhere in the statute for the County or Municipality to issue a boat license. This is indicative of the legislative intent that only the State of Illinois has such licensing power under the statute.

Even in section 120 of the same Act, the legislative intent for one license for boats is disclosed in the provision that no license of any kind issued by the State Commission or any local commission shall be issued to a person who is not a resident of any city, village or county in which the premises covered by the license are located "except in case of railroad or boat licenses." In the revocation section (1965 Ill Rev Stats, c 43, § 150) there is also a clear indication that no local license is required. The provision recites that all proceedings for revocation or suspension of licenses of manufacturers, distributors, importing distributors, foreign importers, nonbeverage users, railroads, airplanes and boats shall be before the State Commission. It is apparent that the Legislature recognized that only the State would have jurisdiction over boat licenses, since there is no local license involved where a boat license is issued. It is apparent from a recital of all of the applicable sections of the Dram Shop Act that while a local license is required before a State license can be obtained in other categories, it is not required in licenses of the character involved before us.

■ ■ Local authorities such as counties and unincorporated areas have only such authority in liquor control matters as are specifically given them by statute and primary authority for liquor control rests with the State of Illinois. The courts of this State have indicated that the Dram Shop Act should be strictly construed as to the granting of authority to municipalities. In Heidenreich v. Ronske, 26 Ill2d 360, 187 NE2d 261, Du

Page County attempted to license bartenders. The Supreme Court in that case stated (at pages 364–365):

> "The comprehensive grant of power in the Liquor Control Act is far different in scope than the general grant of the power to cities and villages over sidewalks, streets and buildings relied on in Concrete Contractors' Ass'n of Greater Chicago v. Village of LaGrange Park, 14 Ill2d 65. There the legislature had left open the permissible methods by which the villages could effectuate their granted power. Under the Liquor Control Act, however, the legislature granted the power to regulate and also prescribed the method of licensing by which such regulation might be effectuated. It is significant that the legislature also limited the implied power of the municipality by providing that 'the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in Sections 2, 8, 8a and 21 of Article VI of this Act.'

> "The legislature also, in the same act, gave municipalities the specific power to prohibit women and minors, other than a licensee or wife of a licensee, from drawing, pouring or mixing alcoholic liquor in licensed premises.

> "We have repeatedly said that the sole power a municipality has to regulate the sale of alcoholic beverages is that conferred upon it by the State. (Henson v. City of Chicago, 415 Ill 564, 569; Sager v. City of Silvis, 402 Ill 262, 265.) In Illinois, the Liquor Control Act provides for the control of all matters relating to alcoholic liquors, and the sole power of an Illinois municipality over the liquor traffic must be found within the ambit of its provisions. Sager v. City of Silvis, 402 Ill 262, 265."

It is obvious that a boat could be operated in as many as a dozen or more townships and may stop at a couple

223

of dozen different places along the Mississippi. The Dram Shop Act apparently was designed to allow the State to issue one license to a boat owner rather than to have the boat owner obtain a separate license in each township through which it might travel or at which it might dock. The legislature apparently felt that great confusion could arise if separate licenses were required from each township or city at which the boat might dock. It is apparent that it was the legislative intent to require only the issuance of a boat license, and it was not necessary for defendant to have a liquor license issued by Hancock County in order to sell alcoholic liquor at retail on the boat.

It is noted that in section 115(f) of the Dram Shop Act, a boat license is issued for "any passenger boat regularly operated as a common carrier on navigable waters in this State." Certainly the operation of a passenger boat as a common carrier would include stopping or docking. There is no implication in the Act that the license would only be valid as long as the engines are running or the boat is moving. On the record before us, the Addie May met the requirements of the Act. If the boat had remained tied up at the dock for a period of weeks, for example, it might raise a question as to whether it was being regularly operated as a common carrier. On the record before us, however, there was clearly an operation as a common carrier here, since the boat had actually made a trip on the evening shortly before the arrest.

By virtue of our conclusion in this opinion there is no occasion to remand this cause for retrial. The judgment of the Circuit Court of Hancock County is, therefore, reversed and the sentence of the court is vacated and set aside.

Judgment reversed and sentence vacated.

STOUDER and SCHEINEMAN, JJ., concur.